IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

      v.

PHENG VANG,

          Defendant.

Case No.: 16-cr-59-wmc

---

UNITED STATES' OBJECTION TO DEFENDANT'S THIRD
MOTION FOR COMPASSIONATE RELEASE

---

      The United States of America, by Timothy M. O'Shea, United States Attorney for the Western District of Wisconsin, by Assistant United States Attorney Elizabeth Altman, opposes Defendant Pheng Vang's third request for compassionate release. It is hard to determine exactly on what Vang bases his motion. He mentions changes to the BOP's process for determining time credits (R. 113, pgs. 12-23), complains about sentencing disparities (Id., pg. 23), seems to make some sort of challenge to the guidelines (Id., pgs. 23-35), and claims that he has undergone remarkable rehabilitation (Id., pgs. 36-39). It appears that the defendant is simply asking to be resentenced to time served. (Id., 38).

      Nothing has changed since the first two times the defendant requested compassionate release and his motion should again be denied. The defendant has not shown extraordinary and compelling reasons that warrant release and there are no legal grounds that apply at this stage. Because he cannot meet these requirements, the Court

should not even get to the question of whether the defendant is still dangerous. If it does reach that issue, however, the facts clearly show the defendant would still be a danger to the community if released.

I.      Background

The investigation into Vang began in April 2015 when a confidential informant (CI 1398) told an Eau Claire Police Department Investigator that he[1] bought one to two ounces of methamphetamine from Vang 10 to 20 times. (R. 54, ¶ 10). A month later a different CI (CI 1401) told law enforcement that he purchased ½ ounce to ounce quantities of methamphetamine from Vang every other day for two weeks in early May 2015. (Id., ¶ 11). CI 1401 also reported that he believed Vang used a butcher shop in Colfax, Wisconsin to launder drugs. (Id.).

On January 25, 2016, yet another CI (CI 1319) reported that he saw multiple pounds of marijuana at Vang's residence in Colfax. CI 1319 also reported that Vang told CI 1319 that Vang had a pound of methamphetamine in his possession and could get any amount CI 1319 wanted. (Id., ¶ 12). CI 1319 also reported that on one occasion while at the Colfax residence, Vang said something to his codefendant, Pao Hang, who then left the room and returned with methamphetamine for CI 1319. (Id., ¶ 14). CI 1319 reported that Vang told him that he earned approximately $200,000 from selling drugs and used the money to purchase a butcher shop in Colfax. (Id., ¶ 15).

CIs 1253 and 1460 also reported purchasing methamphetamine from Vang at

---

[1] All confidential sources will be referred to in the masculine. See, *Strunk and White* (2000), Elements of Style, pg. 60.

Vang's residence. (Id., ¶¶ 17, 20). CI 1460 also told officers that Ten Her, from who he also purchased methamphetamine, was Vang's "right hand man." (Id., ¶ 20). CI 1467 told law enforcement officers that he purchased one-half pound of methamphetamine from Vang, and while at Vang's residence, saw 40 pounds of marijuana delivered there. (Id., ¶ 22).

After receiving this information, law enforcement arranged a series of controlled buys from Vang. On February 11, 2016, CI 1319 went to Vang's residence. (Id., ¶ 23). While there, Vang and Hang discussed a prior drug debt CI 1319 owed and Vang agreed to sell CI 1319 a quarter ounce of methamphetamine. (Id.). Once the agreement was made, Hang left the room and returned with the methamphetamine. (Id.).

On February 12, 2016, CI 1319 went to Vang's residence and spoke to Hang. (R. 54, ¶ 24). Hang left the residence and told Vang that CI 1319 had arrived. (Id.). CI 1319 and Vang discussed large amounts of methamphetamine that were in the house and CI 1319 ultimately purchased approximately 14 grams of methamphetamine on that day. (Id.).

On February 18, 2016, CI 1319 met Vang and Hang at Vang's residence where Vang agreed to sell CI 1319 an eight-ball of methamphetamine. (Id.). Vang then said something to Hang who was seen by undercover officers leaving the house, entering a tool shed, and returning to the residence. (Id.). He then gave the methamphetamine to Vang who gave it to CI 1319. (Id.).

On June 13, 2016, CI 1467 purchased approximately 62.3 grams of methamphetamine from Vang at a different residence in rural Menomonie. (Id., ¶ 26).

3

On June 23, 2016, a search warrant was executed at that location and officers found $6,604, a vacuum sealing system, a scale, Ziploc bags, 619 grams of methamphetamine, and 951 grams of marijuana. (Id, ¶ 28).

That same day, officers executed a search warrant at the defendant's residence in Colfax. There officers found drug notes, packaging materials, small amounts of drugs, and two guns. (Id., ¶ 29). The guns were located in a bedroom that contained illegal drugs and drug packaging material. (Id., ¶ 29).

Vang pleaded guilty without the benefit of a plea agreement. Following his plea, a Presentence Report (PSR) was prepared. To calculate Vang's advisory guideline range under USSG. § 2D1.1, the probation officer used a base-offense-level of 38[2] then added the following enhancements: two levels for use of a firearm in connection to the offense, two levels for maintaining a drug premises, and two levels for his role in the offense. (R. 54 ¶¶ 38-42). All these enhancements resulted in an adjusted-offense-level of 44. (Id., ¶ 44). After subtracting three-levels for acceptance of responsibility and combining Vang's criminal history category of VI, the probation office determined that Vang's advisory-guideline-range was 360 months to life. (Id., ¶ 150).

At the sentencing hearing, the Court found that the information provided by the confidential informants was credible. (R. 88, pgs. 3-4). The Court also concluded that the presentence report "provided ample evidence to conclude [Vang] served a

---

[2] The probation writer believed this base offense level was a conservative estimate of the defendant's relevant conduct because additional quantities of methamphetamine confidential informants reported observing were not included in the base offense level. (R. 54, ¶ 32).

4

supervisory role in the drug operation," including setting the price of the methamphetamine and directing the actions of his codefendant. (Id., pg. 4). The Court then adopted the rest of the calculations set forth in the PSR. (Id., pgs. 5-6). Following arguments by both sides, the Court sentenced Vang to 15 years in prison.

According to the Federal Bureau of Prisons (BOP) website, the defendant is assigned to FCI Pekin, and his projected release date is April 4, 2029.[3] The defendant originally moved for supervised release on October 7, 2020. (R. 101). This Court denied the motion, finding that "Vang's avoidance of disciplinary infractions and completion of several programs since his incarceration reflects efforts toward rehabilitation" but could not conclude that release when he had served less than half of his sentence would be an adequate term of imprisonment to hold him accountable and protect the community. (R. 106, pg. 2).

The defendant moved for compassionate release a second time on September 17, 2021, based on COVID-19's general impact in the BOP. (R. 108). The Court denied the motion finding the defendant provided "*no* evidence that he is a viable candidate for compassionate release at this time" and expressing concerns about the defendant's polysubstance additions and history of selling large amounts of methamphetamine. (R. 111, pg. 1) (emphasis in the original).

II.     Argument

Vang seems to request release based on numerous factors, none of which are

---

[3] https://www.bop.gov/inmateloc/.

5

things the Court can consider at this time. He mentions changes to the BOP's process for determining time credits (R. 113, pgs. 12-23); sentencing disparities (Id., pg. 23), seems to make some sort of challenge to the guidelines (Id., pgs. 23-35) and claims that he has undergone remarkable rehabilitation (Id., pgs. 36-39). It appears that the defendant is simply asking to be resentenced to time served. (Id., 38).

While a district court generally "may not modify a term of imprisonment once it has been imposed," compassionate release under 18 U.S.C. § 3582(c) is an exception to this rule. Under § 3582(c)(1)(A)(i), an inmate may seek a sentencing reduction based on "extraordinary and compelling reasons" typically related to extreme medical or family circumstances. Under the First Step Act, an inmate who has been denied relief by the BOP, or who has not received a timely answer from the BOP, may move the sentencing court for release.

Title 18, United States Code, Section 3582(c) allows the modification "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ." § 3582(c)(1)(A).

A new administrative request is required with each request for compassionate release so the warden can assess any circumstances that have changed. The defendant has met that requirement here. (R. 113-4).

That, however, is just the beginning of the inquiry. If the defendant meets the exhaustion requirement, § 3582(c)(1)(A) provides that the Court may lower a defendant's sentence where:

- the Court has considered anew the 18 U.S.C. § 3553(a) sentencing factors;
- the defendant has demonstrated that "extraordinary and compelling reasons warrant such a reduction;" and
- the proposed "reduction is consistent with applicable policy statements issued by the Sentencing Commission."

As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. The burden rests with the defendant. *United States v. Newton*, 996 F.3d 485, 490 (7th Cir. 2021).

A defendant's motion for compassionate release thus involves a threshold exhaustion question followed by a two-step inquiry. *United States v. Gunn*, 980 F.3d 1178, 1179-80 (7th Cir. 2020); *United States v. Kurzynowski*, 17 F.4th 756, 759 (7th Cir. 2021). Step 1: After exhaustion, is there an extraordinary and compelling reason for release? Step 2: If so, is release appropriate under Section 3553(a)? *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). The defendant's motion should be denied because he has failed to carry his burden under either step of the compassionate release analysis.

The challenges Vang makes to the guidelines and his arguments about disparity do not constitute extraordinary and compelling reasons for release. They amount to nothing more than challenges to his original sentence. Nor is his claim of rehabilitation.

7

*See United States v. Vaughn*, 62 F. 4th 1071, 1072 (7th Cir. 2023). To the extent the defendant is arguing that he would receive a shorter sentence under the First Step Act, courts cannot consider non-retroactive changes to mandatory sentences when determining whether something is an extraordinary and compelling reason. *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021).

"The compassionate release statute 'only goes so far' and 'cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in' other statutes." *United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022) (quoting *Thacker*, 4 F.4th at 574). "There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *see also United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023); *United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021).

Even if the Court were to find the defendant's claims to be extraordinary and compelling, the Court must then consider the § 3553(a) factors to determine whether a sentence reduction is appropriate. It is not.

As detailed in the Government's original brief in opposition to compassionate release, the defendant committed a serious crime. He was convicted of distributing 50 grams or more of methamphetamine. (R. 75). His relevant conduct conservatively involved approximately 5.83 kilograms of methamphetamine, ranging from approximately 83 percent to 98 percent pure. (R. 54, ¶ 32). There were two guns

8

located during the execution of the search warrant at the commercial property he used to deliver the drugs, (Id., ¶ 39), and he involved others in his crimes. (Id., ¶ 42).

The defendant also promoted prostitution-type activity in connection with his drug dealing. (R. 54, ¶ 49). More than one woman indicated that he offered them methamphetamine to induce them into sexual activity with his friends. (Id. ¶ ¶ 51-59). Two different women reported that they engaged in sex with multiple men for drugs at the defendant's direction. (Id.).

At the time of the offenses in this case, the defendant had already been convicted of contributing to the delinquency of a minor, theft, disorderly conduct, obstructing an officer, bail jumping, OWI 4th, and battery. (R. 54, ¶ ¶ 68-86). The conduct for his battery charge consisted of assaulting the mother of his child, hitting her on the face and choking her while she held their child. (Id. ¶ 84). The defendant also has a history of drug crimes dating back to age 17. (Id., ¶¶ 71, 78-79, 98-99).[4] He committed a number of these crimes, including the crimes charged in the indictment, while on supervision for other criminal offenses. He had a criminal history category VI based on points, not on the basis of being a career offender.

In sentencing the defendant, this Court described the defendant's drug dealing activities as "fairly callous and calculating." (R. 88, pg. 7). This Court also expressed concern with the amount of drugs involved, the addictive nature of methamphetamine and the purity of the drugs involved, and concluded that the defendant exploited drug

---

[4] One of these drug convictions was vacated because the defendant was not advised of the immigration consequences of his plea.

addicts for his benefit. (Id., pg. 20). The defendant is clearly a danger to the community and should not be released.

IV. Conclusion

Based on the above, the United States asks this Court to deny the defendant's motion for compassionate release.

Dated this 12th day of June.

TIMOTHY M. O'SHEA
United States Attorney

By: /s/
ELIZABETH ALTMAN
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2023, I caused a copy of the United States' response to be placed in the United States Mail, First Class and postage prepaid, addressed to:

Pheng Vang #10555-090
FCI Pekin
P.O. Box 5000
Pekin, IL 61555

/s/

Lisa A. Pierce

10